1590 Irma Aguilar-Escoto v. William P. Barr Good morning, your honors, and may it please the court. My name is Kenyon Hall, and I will be arguing on behalf of the petitioner, Irma Aguilar-Escoto. At the outset, I would ask to please be permitted to reserve three minutes for rebuttal. Yes. Thank you, your honor. Ms. Aguilar's matter has come before this court once previously. At that time, the court remanded to the Board of Immigration Appeals with clear instructions. The Board of Immigration Appeals was required to set aside Ms. Aguilar's testimony and to consider whether the documentary evidence in the record, standing alone, applying an appropriate, purely objective standard, supported withholding of removal. The question of whether the board did so on remand is a question of law and is reviewed by this court de novo. Simply put, the Board of Immigration Appeals did not follow this court's instructions on remand. While the board referenced the purely objective standard at the outset of its May 21, 2018 decision, it proceeded to reference Ms. Aguilar's testimony no fewer than seven times in its brief discussion of the documentary evidence. That discussion was limited to cataloging the ways in which Ms. Aguilar's documentary evidence purportedly differed from testimony that the board had already determined to discredit. The board scarcely referenced the abuse and the severity of the abuse reflected in the documentary evidence. Had the board done so, applying that purely objective standard, perhaps the board would have made note of the fact that the documentary evidence reflected that for a period from at least 2004 to 2008, Ms. Aguilar was abused by her ex-husband, Victor Gonzalez, including hitting, kicking, shoving while she was pregnant, threatening her with a knife, menacing her at her places of work until her employment was terminated, verbally abusing her, spying on her, calling her obscene names, beating and battering her on her face, arms, and other body parts. When I went back to the board, why would it have been inappropriate? Why was it inappropriate for the board? It says it looked at the documentary evidence. It described it using adjectives such as vague, general, brief, self-serving. And then you're correct, it then listed various respects in which it did not back up the oral testimony. But why is that inappropriate under our order? I didn't read it as saying, therefore, the oral testimony is incredible. I read it as simply pointing out respects in which there was nowhere in the documentary evidence any support for certain of what the board may have considered to be the more serious claims that were before it. Your Honor, to the extent that the board intended to say that the harm reflected in the documentary evidence was insufficient for some reason, either due to its severity or pervasiveness, to rise to a level of persecution, the board was required to articulate that. Instead, the board's analysis was largely limited to assessing the documentary evidence vis-à-vis testimony that the board had already determined to discredit. But your Honor, when we told it to assess the documentary evidence, did we preclude it from opining on the quality of that evidence as opposed to opining on the implications of what's in the evidence if it was deemed to have sufficient evidentiary quality? No, your Honor. The board was permitted to weigh the quality of the evidence and assess that evidence. But in so doing, to the extent that the board did, the board didn't articulate specific cogent reasons for its determination that whatever was set forth in the documentary evidence did not rise to a level of persecution. And why, in commenting on the quality, describing it as vague, general, brief, self-serving, why wouldn't it? Once you say that, why does the board then have to go forward and say, and even if it were not vague, not self-serving, not general, more direct, we wouldn't find it to be adequate? The board referenced, I believe your Honor is referring to two affidavits that the board referenced were self-serving or vague. But the board was also required to consider other documentary evidence in the record, including, for example, police reports from 2004 and 2008. Can I ask you about the 2008 one in particular? As I understand it, that one, what is that 2008 document? Is that a police report, or what is that? Your Honor, there are two 2008 reports to authorities. Which is the one that the board, by your account, and I think the government concedes, did not reference anywhere in its opinion? There's an attestation provided by the headquarters of the Honduran Criminal Investigation Department, and that headquarters attestation attests that on August 8, 2008, Ms. Aguilar filed a formal accusation of domestic violence before the Criminal Investigations Department against Mr. Gonzalez. The Criminal Investigations Department, based on that accusation, also determined that there was evidence that Mr. Gonzalez had struck Ms. Aguilar, and that Ms. Aguilar's family members had contemporaneously reported that Mr. Gonzalez had threatened to kill Ms. Aguilar. So that is just never referenced in the BIA decision at all, and I think I read your brief to be the same, but maybe you can confirm it for me. Is that an independent basis for vacating the BIA's decision, in your view? The failure to address that piece of evidence? In other words, with respect to your colloquy with Judge Cayada, if one were to conclude that the board did follow our remand order in the sense that it considered the documentary evidence as documentary evidence, and passed on its quality, and concluded that the documentary evidence it did review,  and that the IJ did not clearly err in determining that the abuse documented there did not rise to the level of persecution, would there still be a basis for vacating and remanding on the ground that the board failed to consider a significant piece of that documentary evidence, which is this 2008 report you just described? That's correct, Your Honor. The board was required to consider all relevant evidence in the record, and in this case, part of the board's mandate was to review the documentary evidence. Now, as I understand it, the government's response to that is that it was effectively harmless, because the IJ did consider that piece of evidence, correct? The IJ did reference that piece of evidence, yes, Your Honor. And so what are we to do with the fact that the BIA says the IJ did not clearly err, but in reaching that conclusion doesn't refer to this piece of evidence that the IJ did review? While the IJ did discuss the documentary evidence, the Board of Immigration Appeals on remand in 2017 was required to freshly review the documentary evidence in the record based on this court's mandate. In doing so, this court referenced that the Board of Immigration Appeals should review all relevant evidence in the record, and the Board of Immigration Appeals failed to do so. Insofar as the immigration judge concluded that the documentary evidence did not support past persecution, that is also not supported by the substantial evidence. In this regard, Diez de Rojas versus the U.S. Attorney General is instructive. That's a very recent 11th Circuit decision. It came down in November of 2018 after Ms. Aguilar had already filed her opening brief in this matter. Diez de Rojas dealt with very factually analogous circumstances. The petitioner had asserted that she had suffered domestic violence for a period of years at the hands of her ex-husband, and in support of her claim for withholding of removal, she submitted documentary evidence, including a letter confirming that she had attended support group sessions for victims of domestic violence, a psychiatric evaluation, country conditions reports, and letters from her pastor, sister, and mother confirming that they had observed the abuse. And on that record, and notwithstanding an adverse credibility determination in that case, the 11th Circuit determined that the record compelled a finding of past persecution and remanded to the Board of Immigration Appeals for further consideration on that basis. We are simply asking that this court do the same. Well, are you asking only for that? Or are you also asking that if we didn't go that far, that at a minimum, the BIA cannot find as it did without evaluating and making an assessment of the significance of this 2008 report? Your Honor, we're requesting both. In the first instance, the Board of Immigration Appeals erred in two ways on remand. In the first instance, this court had required that the Board of Immigration Appeals consider all relevant evidence in the record, and the Board did not do so. And to the extent the Board did discuss the documentary evidence in the record, that discussion was limited to weighing it vis-a-vis Ms. Aguilar's credibility and not by setting aside her testimony as this court had required. In the second instance, the finding that Ms. Aguilar had not suffered harm rising to the level of past persecution is not supported by the substantial evidence. The Board, to the extent that they intended to find that the harm didn't rise to the level of persecution, did not articulate the reasons for that finding. There are no specific cogent reasons for why the pervasive abuse that is reflected in the documentary evidence for at least a period of four years would not rise to this court's standard of persecution, which encompasses less than just threats to life or freedom, but more than mere harassment or annoyance. And it is clear that Ms. Aguilar has far exceeded that standard of mere harassment or annoyance. Let's assume that the record as a whole would justify, under the applicable standard of review, if the BIA did everything it was supposed to, it would justify a ruling going either way, and we would not be in a position to reverse that. However, there was a procedural defalcation in that the BIA did not address seven or eight pieces of documentary evidence, and so we sent it back to them with a specific mandate to review that documentary evidence. And then assume, and I know you disagree, that they reviewed most of it, but not all, one relatively significant piece, the August 8, 2008 report that you described, they didn't appear to review at all. So if we were to rule on that grounds for you, would we need to find that it is possible under BIA rules that they could reverse the IJA based on the cumulative, the additional impact of that item? Your Honor, if I understand your question correctly, if this matter were remanded to the BIA, implicitly, yes, it would be because there was some finding in this court that the analysis may have changed or that the outcome may differ if the evidence had been properly considered, both in terms of the harm that that evidence reflects and in terms of considering all of the relevant evidence in the record. There would presumably be some likelihood that the Board of Immigration Appeals, conducting the proper analysis, would conclude that the immigration judge had clearly erred. On that score, what do you say to the, well, the prong with respect to government participation or at the hands of or acquiescence where the board at least says that you haven't made a significant enough showing that the government would be unable or unwilling to protect her? The question of whether that legal standard was correctly applied is a question of law as well and is reviewed by this court de novo. In its May 21, 2018 decision, the board incorrectly applied the standard by treating it as a single element. This court's precedent reflects that a petitioner need only show that the government was either unable or unwilling to control the conducted issue. And this court and others have found that activity including, for example, opening an investigation, taking statements from victims, issuing police reports, or even issuing orders, may reflect that a government is willing to control the conducted issue but not necessarily able to do so. So this isn't a substantial evidence question? The question of whether a legal standard was correctly applied is a question of law that would be reviewed by this court de novo. But in this case, the board lists country reports and a number of our cases in which we have apparently said that the government of this particular country has made efforts, although it hasn't been successful in every instance, and the board seems to rest on that. I want to know why that's not sufficient. Your Honor, I see my time is up. It's not up. Thank you. The country conditions reports reflect that domestic violence continues to be a pervasive problem in Honduras. The 2011 report in the record reflects that that year alone there were 267 killings of women. There were 7,742 domestic violence complaints filed before the police. The relief and protection available to victims of domestic violence is extremely limited, and the laws that were on the books were enforced inefficiently. To the extent that there were programs available for victims of domestic violence, those programs received inadequate funding to operate. Based on that record as a whole, combined with the fact that the protective orders Ms. Aguilar was able to obtain were scarcely worth the paper that they were printed on, and there is nothing to suggest that they successfully curbed Mr. Gonzalez's abuse. Taking all of that as a whole, it appears that the government was perhaps willing to assist Ms. Aguilar and control the conducted issue, but certainly not able to do so in any meaningful sense. Maybe I'm misunderstanding. I thought the unwilling and unable analysis in the BIA's opinion is in connection with rejecting the future persecution claim. It's not a finding that the persecution insofar as it occurred in the past was not tied to government behavior, because the BIA has never reached that question. That's correct, Your Honor. So what are we supposed to do in a circumstance when there is a bunch of evidence that the BIA has laid out, and you say it's not substantial enough to support the finding that the government would be responsible for any domestic violence that occurred going forward. But is that a finding that can suffice to conclude that the persecution that occurred in the past was not the product of governmental action, or wouldn't there need to be a separate finding on that point? I'm sorry, Your Honor, can you repeat your question? In any case in which there's persecution, whether it's past persecution or future persecution, the level of violence has to be a product of governmental action, or inaction has to be attributable to the government. It's not enough to show that there was violence that rises to a level that would equate to persecution. You also have to make this showing that the government is somehow implicated in it. That's correct. As I read the BIA's opinion, they conclude with respect to the future persecution claim that the government would not be implicated, there's no showing that has been made that the government would be implicated in any future persecution that she might fear, and therefore she can't win on that claim. They lay out a bunch of evidence about how this country responds to domestic violence. But I don't need the BIA to have separately found that whatever violence she suffered in the past that might equate to persecution can't be attributed to the government, because they never reached that question since they find there was no level of violence sufficient to get to persecution at all. And not to confuse you, but I read the record the same way as Judge Barron. I don't see that prong of past persecution as being an issue in this case. So my question goes to the potential for future persecution. Just assume that there is a finding of past persecution. Your Honor, if there's a finding of past persecution, Ms. Aguilar-Escoto should have been entitled to a rebuttable presumption that her life of freedom would be threatened if she were returned to Honduras. And on that basis, the burden would have shifted to the government to show that either the country conditions had changed or that it would be safe and reasonable for Ms. Aguilar to locate within Honduras in the first instance. And the government has not so rebutted that presumption. And the BIA has never evaluated the evidence with the burden reversed that way. That is correct, Your Honor. Nor has the BIA ever made a finding that the government was not implicated in the past persecution she may have suffered insofar as the violence she identifies rises to the level of persecution. That is also correct. With respect to past persecution, there are a number of factors that would typically be considered. Neither the immigration judge nor the board ever went beyond the first factor, which is whether the harm rose to the level of persecution. And so the unable or unwilling standard has never been assessed with respect to her claim of past persecution. Thank you. Thank you, Your Honors. Good morning, Your Honors. Yadal Yusuf for the Attorney General. This case is before this Court once more after its remand, requesting that the agency take a look at the objective evidence independent of the adverse credibility finding. On remand, the agency conducted its analysis of the objective evidence and concluded that the evidence did not establish that the petitioner met her burden of proof for withholding of removal. The record here does not compel reversal of that finding. The agency, as was discussed with Judge Kayada, referenced the evidence by looking at it in the sense that it was general, vague, self-serving, and did not establish that the petitioner established harm rising to the level of past persecution or a clear probability of future persecution. But what about the August 8th document? As to that date, as we indicated in our brief, the Board did not address it specifically. The immigration judge did, however, and in reviewing that, and so I think while the Board's decision could have been more thorough and addressed that specific document, it did indicate that in finding that the harm did not rise to the level of persecution, it made that conclusion based on its review in which it said on this record, and on this record, which includes this document. So I think, yes, it would have been better for the agency to be more explicit in addressing it, but I think the discussion by the agency, the Board was sufficient in upholding that, the immigration judge's determination. Well, if they just said we reviewed the record and then didn't mention it, then your point would have some force that we would infer that they reviewed the whole record and chose to only mention ones. But here, I think they, as you concede in your footnote, they aired and specifically referred to her having submitted two complaints when, in fact, there were three. So that seems to suggest not that they reviewed something and didn't mention it, but rather that they may have simply overlooked something. Yes, I would think that based on the fact that they were reviewing the immigration judge's decision for clear error, and based on the fact that they indicated on this record that they did conduct an analysis, and I might be misunderstanding your question, but I do feel that their decision, while not as complete as we'd like. Well, the question, the BIA characterizes the record they're reviewing as including two complaints when, as your brief concedes, there were three. Yes, Your Honor. And then, in fact, the BIA only references the two complaints, never mentions the third. So what basis do we have for concluding that the BIA looked at that third record when it, by its own terms, say there were only two? Well, I think it's the fact that they did expressly indicate that it was only two versus three. That is an issue in terms of it does bring into question why they addressed it. So that means we can't be sure they did. But they referenced the IJ's decision specifically in which the IJ did consider that evidence. So it's at least unclear whether they reviewed the third record, right? I guess it would be at least unclear. So what do we do if that third record happens to be a record that has two qualities that might cast doubt on whether the BIA's reasoning would cover it? One, unlike the other records, which are self-serving affidavits, this is not. And two, this contains a direct allegation of a threat to kill in connection with violence, which the other documents don't. So the very thing that the BIA identifies as features lacking in the documents it does mention, the document it doesn't mention, in which you say we're not sure whether they even looked at, has both of those qualities. It's not by a self-serving speaker, and it references a threat to kill in connection with violence. So in those circumstances, why wouldn't we go back to the BIA and say you've got to review this and tell us what you think of it. Then we could evaluate whether taking that evidence all in, there's a basis for affirming the BIA, if they were to conclude that even then there was no persecution. Well, I think, Your Honor, what we could look at is if we do look at that document, and I would point back to the fact that they had referenced the immigration judge's decision where the immigration judge did analyze that. But that was true of the prior appeal. They referenced the immigration judge's opinion, and yet we vacated and rebanned specifically to look at documentary evidence, which included this item, which now appears there's a reasonable probability they overlooked. Well, in the prior decision, the board specifically focused entirely on adverse credibility determination, did not look at the immigration judge's review of the objective evidence as it pertained to whether or not the petitioner met her burden of proof. So I think there's a distinction there. This time, the problem is that they specifically referenced two complaints when there were three. So we don't know if they looked at the third, as you've acknowledged. Well, I guess it goes back to the administrative agency review. There is a presumption that they would have looked at the record, and they indicated on this record that they looked at the evidence. But they described the record as only concluding two complaints. That's the problem. Well, I guess I would say that this single piece of evidence does not necessarily change the outcome here. It does, but it is a burden document where— You just used the word necessarily. Oh, sorry. But that's not our test, is it? In other words, let's accept the proposition that the BIA wouldn't have said two if it had looked at all three, particularly where the third one has a very serious allegation of a threat of death in it. So if we conclude that they overlooked it, on what basis could we go forward and say, but even if they had looked at it, it wouldn't have turned the tide? Don't we need to leave that decision to the BIA? I would say so. I believe that's correct. I guess if we were to look at it as the board looking at it as reviewing the record as a whole, whether this document itself would change its determination, that is a determination the agency would have to make. However, if the court has issue with that past persecution determination, if we look at the unwilling and able analysis, and I believe that does, that would itself, independent of the past persecution determination, require the upholding—substantial evidence would support that determination. If the BIA has never reviewed the—either made a conclusion that the past persecution that occurred was not tied to the government, because it never had to reach that question, since in its view the level of harm was not sufficient to qualify as persecution at all. And with respect to its finding about unable and unwilling as to future persecution, it does that without having the presumption of there being future harm that follows from a finding of past persecution. So it's never reviewed that evidence through the more favorable burden-shifting framework that would apply had there been a finding of past persecution. So under Chenery, again, we don't have the BIA analysis of the relevant questions. But I believe, from my reading of the board's decision, that the unwilling and unable analysis wasn't only limited to the future persecution. The petitioner bears the burden of demonstrating that they suffered past persecution on a counter-protective ground, and in the fact that this is a private actor, that the government was unwilling or unable to protect her. I believe that—in reading the unwilling and unable determination, I believe that was a general alternative finding, that the agency concluded that she did not establish that the government was unwilling or unable to protect her. So after it does its analysis of past persecution, it then says, Moreover, the immigration judge did not clearly err in finding the outpouring to not establish she more likely than not will be persecuted. So it's now talking about future persecution. And then the next paragraph is, Also, he happens to not show that the government of Honduras is, not was, is unable or unwilling to protect her from Mr. Gonzalez. So I don't see how it would be clear that the BIA there is making a finding that even if the harm in the past was severe enough to potentially qualify as persecution, it couldn't be persecution because the government wasn't involved in it. That's a lot to read into a paragraph that appears only after the BIA starts talking about future persecution. I guess I'm looking at the fact that they reference the immigration judge's discussion of the complaints that she filed, and relying on that in concluding and finding that there was no inability or unwillingness shown. So that's the reading I'm taking in terms of addressing her application as a whole and not just focusing on fear of future harm. And I believe that the record does support that conclusion, that the petitioner did seek out the assistance of the government, and the government attempted to protect her. The government issued a protective order for two months, issued a second protective order that lasted for 24 hours, attempted to arrest the individual, and in instances where she called the police, the police came to her home. This is not a situation where the government was unwilling or completely did not attempt to protect a citizen of their country. This is a situation not, for example, in other cases, if I'm not in this court's decision where the petitioner had twice called the police, the police completely ignored. It was even the fact that the police seemed to be sympathetic to the persecutors in that case. And here we don't have that. We don't have any evidence of the government's complicity or a complete lack of attempt to protect the individual at all. So I think that's what distinguishes it. I still, though, with respect to future persecution or the government's ability to protect her in the future, I return to the missing document. It looks to me like this is a case of the dog that didn't bark. That document with the two qualities that Judge Barron described seems to me to be one that they would have discussed. I know about our law that says they don't have to discuss every piece of evidence, but this one is, it's a game changer, isn't it? And if it's not, why isn't it? I believe that based on this one document, if we were to look at it, it doesn't alter the ultimate conclusion. Yes, it references a threat and it references, I believe, insults and abuse. I think the agents, as the immigration judge in reviewing it, concluded that this evidence did not demonstrate. Okay, so I would have then expected some discussion of that. But we live in a real world here. Is that document really so insignificant that it's something that the board, had it looked at, would not have mentioned? To say nothing about the fact that it said there were only two documents. I can't speak for the board on that. But you have to. No, sorry. Because you have to help me. It would have been better if they addressed it specifically, if they had referenced this document. That would have demonstrated a more thorough review and demonstrated a more solid decision. I understand that. But I thought in your brief, I mean, it's not a bad thing. You were candid in the brief. I thought the government's brief admirably acknowledged that there was an error. Not just that, gee, it would have been better if they had said it, but actually they did an error. The way you wrote it in the brief was that they did not review this piece of evidence, which was a thing. But it's not a problem because of the IJ's ruling. Yes, I think that was my initial response to this line of questioning, is that the fact that they didn't address it, they should have, but they did reference the immigration judge who did conduct a review of that document. So I think I would still stick with that approach, Your Honor. On the future persecution, I take your point that in the unwilling and unable discussion, the BIA cites to the IJ's discussion of unwilling or unable. But just looking at it, it cites to page 17 of the IJ's decision. And when I go to page 17, that appears in the IJ's discussion under the heading future persecution. So isn't that a pretty strong indication that the BIA there is discussing future persecution rather than making a finding about the government's involvement in the past persecution? I guess that does fit within that. But it may have been a situation in the context of withholding of removal, which is kind of a perspective, a future sort of relief, and so they may have been looking at it within that context. But nonetheless, to establish our ability to withholding, if it's based on past persecution, the government nexus must still be addressed because it is a private actor. So to address that. Unless there's anything further, Your Honors. No, thank you. That was very helpful. Thank you. I'd like to just address a couple of points briefly, Your Honors. I believe counsel referenced a few times that it would be sufficient that the immigration judge reviewed the August 8, 2008 attestation of the formal complaint of domestic violence. To Your Honor's point, if the IJ's review were sufficient to correct for or render meaningless the BIA's errors, this matter would not have been remanded in the first instance in 2017. The Board of Immigration Appeals had a mandate from this court to consider all relevant evidence in the record and to conduct an analysis of the documentary evidence setting aside Ms. Aguilar's testimony. And the board did not do so, neglecting to reference a critical piece of evidence, confirming Ms. Aguilar's contentions that she was subject to abuse by Mr. Gonzalez, that it continued during the year that she was pregnant in 2008, that there was evidence that he had struck her, and that Mr. Gonzalez had threatened to kill her. Counsel mentioned that the board could have done a more thorough review on remand, and on that ground alone, the appropriate remedy is at a minimum remand, if not reversal. The record is clear, both in the documentary evidence and Ms. Aguilar's testimony, that Ms. Aguilar suffered years of abuse at the hands of Victor Gonzalez. At a minimum, remand to the Board of Immigration Appeals to allow them to correct course and to analyze the factors necessary for a finding of past persecution appropriately is the proper remedy. But with that said, this matter has a long history. Due to various errors in analysis at different stages in the process, Ms. Aguilar's matter has been wending its way through different administrative bodies and courts for almost a decade, and she's been living with tremendous uncertainty during that time. In view of that great uncertainty and the violence that awaits her if she's returned to Honduras, we would ask that this court take up this issue itself and enter judgment in her favor. But if not, then at a minimum, this court vacate the Board's May 21, 2018 decision and remand for further proceedings. Thank you. Thank you both.